**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In Re: LOCKHART CHEMICAL COMPANY,            Bankruptcy No.: 22-22005-CMB

**Debtor,**

Chapter 7

NATALIE LUTZ CARDIELLO, CHAPTER
7 TRUSTEE FOR LOCKHART CHEMICAL
COMPANY

**Movant,**

v.

CHUBB GROUP OF INSURANCE
COMPANIES,

**Respondent.**

## EXPEDITED MOTION TO ASSUME EXECUTORY CONTRACT AND TO ENJOIN TERMINATION OF INSURANCE POLICY

AND NOW, comes Natalie Lutz Cardiello, Interim Chapter 7 Trustee (hereinafter "Trustee"), and files the following **MOTION TO ASSUME EXECUTORY CONTRACT AND TO ENJOIN TERMINATION OF INSURANCE POLICY,** and in support thereof, states as follows:

1. The Movant is Natalie Lutz Cardiello, the duly appointed Trustee in this Chapter 7 Bankruptcy Case.

2. This Case was commenced on October 10, 2022.

3. On October 25, 2022, this Honorable Court granted the Trustee's Motion to Operate Debtor's Business Nunc Pro Tunc.

4. The Debtor operates a business which sells chemical products and technical services for various commercial and industrial applications.

5. In order to successfully operate the business, the Trustee requires insurance.

6. The insurance coverage required by the Trustee includes an automobile police, a general liability policy (which includes pollution coverage) and an umbrella policy.

7. Currently, the Debtor has the required insurance coverage in place through Chubb Insurance. A true and correct copy of the Auto Policy is attached hereto as **Exhibit A**. A true and correct copy of the Umbrella Policy is attached hereto as **Exhibit B**. A true and correct copy of the General Liability Policy is attached hereto as **Exhibit C**.

8. There are sufficient assets available to the Trustee to pay for each of the foregoing policies.

9. In fact, as of the filing date, the Debtor had $373,354.51 in its First National Bank checking account.

10. By assuming these Policies, the Trustee can liquidate the remaining assets of the Debtor to maximize the recovery to Estate.

11. The Respondent has indicated that it intends not to renew the foregoing Policies.

12. The Policies expire on or about October 31, 2022.

13. The Polices require that the Respondent provide sixty (60) days' notice of its intent not to renew.

14. Prior to the filing of the Bankruptcy Case, the Trustee believes, and therefore avers, that the Policies were regularly renewed by the Respondent.

15. In fact, each of the attached policies indicates that it is a renewal of prior policy.

16. Given that the course of dealing between the Debtor and the Respondent has been that the Policies would be renewed annually, the Respondent cannot now terminate the Policies by refusing to renew the same.

17. The case of *In re Garnas*, 38 B.R. 221 (Bankr. N.D. 1984), is instructive on this point. In that case, the Court, relying on sections 105, 362 and 363 and 365(e), of the Bankruptcy Code enjoined the insurance company from not renewing the insurance policy at issue as to do so would subject the Debtor to a great risk of loss.

18. In so holding, the Court in *Garnas* held:

> . . . it is clear that policies of the type issued to the Garnas' by and large were automatically renewed upon expiration of the term and that for all practical purposes, there is an unbroken span of coverage afforded a policyholder so long as the premium is paid. Although a policy may state a termination date, that date in most circumstances is simply ignored and the policy continues on and on with the relationships between the insurance company and the policyholder continuing over the term without any interaction between the two except for payment of premium. Under such circumstances, this Court is persuaded that an executory contract within the preview of the Bankruptcy Code does indeed exist between an insurance company and a policyholder despite the fact that an individual policy may provide for one-year coverage.

*See also In re cmty. Mem. Hosp.* 67 Bankr. Ct. Dec. 131, E.D. MI (2019)(" As the Bankruptcy Court found, the contractual relationship between insurer and insured here was continuous and substantially unchanged as between the pre-petition period and the post-petition period. Given that business reality, National Union's declination of coverage impeded an executory contract, in violation of the Bankruptcy Code's prohibition on enforcement of ipso facto provisions); *Elder-Beerman Stores Corp. v.*

*Thomasville Furniture Indus.,* 195 B.R. 1019, 1024 (Bank. S. D. OH, 1996)("As in the instant case, courts have not hesitated to retain the stay, even when one party would otherwise have the power to terminate "at will." This result is best demonstrated in the area of insurance policies. *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New England Reins. Corp. (In re Minoco Group of Cos., Ltd.),* 799 F.2d 517, 519 (9th Cir. 1986) (staying the right to cancel insurance policy under § 362); *Pester Refining Co. v. Insurance Co. of North Am. (In re Pester Refining Co.),* 58 Bankr. 189, 192 (Bankr. S.D. Ia. 1985); *In re B. Siegel Co.,* 51 Bankr. 159, 163-64 (Bankr. E.D. Mich. 1985); *In re Garnas (Garnas v. American Family Mut. Ins. Co.),* 38 Bankr. 221, 223-24 (Bankr. D.N.D. 1984).

19. A similar result is necessary in this case.

20. The orderly operation and liquidation of the Estate will be jeopardized if the Respondent is permitted to not renew the Policies as they are necessary for the Trustee to operate the Debtor's business.

21. The Trustee is able to pay the required premiums.

22. As such, the Trustee requests that the Court compel the Respondent to renew the Policies attached hereto as **Exhibits A, B** and **C** respectively, and that the Trustee be authorized to assume said executory contracts.

23. When issuing preliminary injunctions pursuant to 11 USCS § 105, the Bankruptcy Court considers traditional factors governing preliminary injunctions issues pursuant to FRCP 65. Those factors include (1) likelihood of the applicant's success on the merits; (2) whether applicant will suffer irreparable injury without injunction; (3) harm to others which will occur if injunction is granted; and (4) whether injunction would serve

public interest. I*n re Eagle-Picher Industries, Inc.,* 963 F.2d 855, Bankr. L. Rep. (CCH) ¶ 74574, 1992 U.S. App. LEXIS 9944 (6th Cir. 1992).

24. These factors weigh heavily in favor of the Trustee in this case.

25. First, the Policies were regularly renewed by the Respondent and in fact, the Respondent had indicated to the Debtor its intent to renew the Policies prior to the filing of the Bankruptcy Case.

26. If the Policies are not renewed, the Trustee will be unable to effectively administer the Debtor's Estate. The Debtor has chemical products that must be disposed of by proper means to avoid harm to the public and could be sold for the benefit of creditors of the Estate. Without insurance, the Trustee will be unable to administer these assets which will then be abandoned to the Debtor.

27. There will be no harm to any other party by enjoining the Respondent from terminating the Policies. The Trustee will pay the Respondent for the issuance of the Policies. Furthermore, the risk of exposure to a claim is nominal as the Trustee is not actively conducting business, but rather, is attempting to orderly liquidate and properly dispose of the assets of the Debtor, which include chemical products.

28. Finally, the public interest requires the insurance of injunctive relief. Without an injunction in place, the public will be exposed to substantial harm as the chemical products will be abandoned and not properly disposed of by the Trustee in an orderly manner.

29. The failure to enjoin termination of the Policies will cause a substantial hardship on the Estate and the public at large as the Trustee will be unable to take the appropriate steps to orderly administer the assets of the Debtor.

30. The Trustee's request for an expedited hearing on this matter has not been caused by any lack of due diligence on the party of the Trustee or her counsel, but has been brought about solely by circumstances beyond their control.

WHEREFORE, the Trustee respectfully requests that this Honorable Court enter an Order enjoining the termination of the insurance policies and compelling the renewal of the current insurance policies and authorizing the Trustee to assume the Policies in accordance with 11 U.S.C. §365.

Respectfully Submitted,

Date: October 27, 2022

/s/ David L. Fuchs
David L. Fuchs
PA I.D. #205694
Fuchs Law Office, LLC
554 Washington Avenue
First Floor
Carnegie, PA 15106
(412) 223-5404 phone
(412) 223-5406 fax
dfuchs@fuchslawoffice.com