IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: LOCKHART CHEMICAL COMPANY, | Bankruptcy No.: 22-22005-CMB |
| Debtor, | Chapter 7 |
| NATALIE LUTZ CARDIELLO, CHAPTER 7 TRUSTEE FOR LOCKHART CHEMICAL COMPANY, | |
| Movant, | |
| v. | |
| MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED, | |
| Respondent. | |

### EXPEDITED MOTION TO ENFORCE THE AUTOMATIC STAY, ASSUME EXECUTORY CONTRACT AND TO ENJOIN TERMINATION OF INSURANCE POLICY

AND NOW, comes Natalie Lutz Cardiello, Interim Chapter 7 Trustee, and files the following **EXPEDITED MOTION TO ENFORCE THE AUTOMATIC STAY, ASSUME EXECUTORY CONTRACT AND TO ENJOIN TERMINATION OF INSURANCE POLICY,** and in support thereof, states as follows:

1. The Movant is Natalie Lutz Cardiello, the duly appointed Interim Trustee (hereinafter "Trustee"), in this Chapter 7 Bankruptcy Case.

2. This Case commenced on October 10, 2022.

3. On October 25, 2022, this Honorable Court granted the Trustee's Motion to Operate Debtor's Business Nunc Pro Tunc.

4. The Debtor operates a business which sells chemical products and technical services for various commercial and industrial applications.

5. In order to successfully operate the business, the Trustee requires insurance.

6. The insurance coverage required by the Trustee includes a Commercial Property Insurance Policy (the "Policy") with the Respondent that the Debtor had in place at the time of the filing of this Case. A copy of the Policy is attached hereto as **Exhibit A.**

7. The Trustee has been notified that the Respondent intends to cancel the Policy due to the pending Chapter 7 Case. A copy of the cancellation notice is attached hereto as **Exhibit B.** The notice indicates that the policy will be terminated as of December 4, 2022.

8. To the best of the Chapter 7 Trustee's knowledge, all premiums have been paid to the Respondent.

9. In fact, the policy had been bound for the time period of November 1, 2022, through November 1, 2023, and a payment was made and accepted by the Respondent in the amount of $81,954.54.

10. Furthermore, to the extent additional amounts are due, there are sufficient funds on hand to pay any premiums that are or may become due.

11. Given that the course of dealing between the Debtor and the Respondent has been that the Policy would be renewed annually. In fact, the Respondent renewed the policy and accepted payment for the renewal of the Policy and renewed the policy effective November 1, 2022. The Respondent cannot now terminate the Policy merely because a Chapter 7 Bankruptcy Case had been filed.

12. The case of *In re Garnas*, 38 B.R. 221 (Bankr. N.D. 1984), is instructive on this point. In *Garnas*, the Court, relying on sections 105, 362 and 363 and 365(e), of the Bankruptcy Code enjoined the insurance company from not renewing the insurance policy at issue as to do so would subject the Debtor to a great risk of loss.

13. In so holding, the Court in *Garnas* held:

> . . . it is clear that Policy of the type issued to the Garnas' by and large were automatically renewed upon expiration of the term and that for all practical purposes, there is an unbroken span of coverage afforded a policyholder so long as the premium is paid. Although a policy may state a termination date, that date in most circumstances is simply ignored and the policy continues on and on with the relationships between the insurance company and the policyholder continuing over the term without any interaction between the two except for payment of premium. Under such circumstances, this Court is persuaded that an executory contract within the preview of the Bankruptcy Code does indeed exist between an insurance company and a policyholder despite the fact that an individual policy may provide for one-year coverage.

See also *In re Cmty. Mem. Hosp.* 67 Bankr. Ct. Dec. 131, E.D. MI (2019)(" As the Bankruptcy Court found, the contractual relationship between insurer and insured here was continuous and substantially unchanged as between the pre-petition period and the post-petition period. Given that business reality, National Union's declination of coverage impeded an executory contract, in violation of the Bankruptcy Code's prohibition on enforcement of <u>ipso facto</u> provisions); *Elder-Beerman Stores Corp. v. Thomasville Furniture Indus.,* 195 B.R. 1019, 1024 (Bank. S. D. OH, 1996)("As in the instant case, courts have not hesitated to retain the stay, even when one party would otherwise have the power to terminate "at will." This result is best demonstrated in the area of insurance Policy. *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New England Reins. Corp. (In re Minoco Group of Cos., Ltd.),* 799 F.2d 517, 519 (9th

Cir. 1986) (staying the right to cancel insurance policy under § 362); *Pester Refining Co. v. Insurance Co. of North Am. (In re Pester Refining Co.),* 58 Bankr. 189, 192 (Bankr. S.D. Ia. 1985); *In re B. Siegel Co.,* 51 Bankr. 159, 163-64 (Bankr. E.D. Mich. 1985); *In re Garnas (Garnas v. American Family Mut. Ins. Co.),* 38 Bankr. 221, 223-24 (Bankr. D.N.D. 1984).

14. The course of dealing with the parties clearly establish that this insurance agreement is an executory contract and property of the Estate which cannot be unilaterally terminated by the Respondent.

15. Furthermore, the termination of the insurance policy would be a violation of the automatic stay.

16. In *Elder-Beerman Stores Corp. v. Thomasville Furniture Indus.,* 195 B.R. 1019, 1023-1024(Bankr. S.D. OH 1996), the Court explained:

> Courts have also consistently held that the automatic stay also applies to notices of termination. *Rogue Valley Stations, Inc. v. Birk Oil Co.,* 568 F. Supp. 337, 348 (D. Or. 1983) ("automatic stay prevents franchisor from sending notice of termination or nonrenewal without first securing appropriate relief from stay from the Bankruptcy Court"); *A. Dan Chisholm, Inc. v. B.P. Oil Inc. (In re A. Dan Chisholm, Inc.),* 57 Bankr. 718, 719-20 (Bankr. M.D. Fla. 1986) ("Any notice [or termination] sent in violation of the automatic stay is void and without effect").
>
> As in the instant case, courts have not hesitated to retain the stay, even when one party would otherwise have the power to terminate "at will." This result is best demonstrated in the area of insurance Policy. *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New England Reins. Corp. (In re Minoco Group of Cos., Ltd.),* 799 F.2d 517, 519 (9th Cir. 1986) (staying the right to cancel insurance policy under § 362); *Pester Refining Co. v. Insurance Co. of North Am. (In re Pester Refining Co.),* 58 Bankr. 189, 192 (Bankr. S.D. Ia. 1985); *In re B. Siegel Co., 51 Bankr. 159, 163-64* (Bankr. E.D. Mich. 1985); *In re Garnas (Garnas v. American Family Mut. Ins. Co.),* 38 Bankr. 221, 223-24 (Bankr. D.N.D. 1984).

17. In the present case, the insurance policy is property of the Estate and is subject to automatic stay. *See Harbison-Walker Refractories Co. v. ACE Prop. & Cas. Ins. Co.,* 303 B.R. 753, 762 (Bankr. W.D. Pa. 2004)("An insurance policy owned by the debtor is generally considered property of the estate . . .").

18. The orderly operation and liquidation of the Estate will be jeopardized if the Respondent is permitted to terminate the Policy merely because the Debtor filed for Bankruptcy.

19. As such, the Trustee requests that the Respondent be enjoined from terminating the Policy as it is a violation of the automatic stay.

20. When issuing preliminary injunction pursuant to 11 USCS § 105, the Bankruptcy Court considers traditional factors governing preliminary injunctions issues pursuant to FRCP 65. Those factors include (1) likelihood of the applicant's success on the merits; (2) whether applicant will suffer irreparable injury without injunction; (3) harm to others which will occur if injunction is granted; and (4) whether injunction would serve public interest. I*n re Eagle-Picher Industries, Inc.,* 963 F.2d 855, Bankr. L. Rep. (CCH) ¶ 74574, 1992 U.S. App. LEXIS 9944 (6th Cir. 1992).

21. These factors weigh heavily in favor of the Trustee in this case.

22. First, the Policy was renewed by the Respondent and the Respondent accepted payment to renew the Policy commencing November 1, 2022. The Respondent is only terminating the Policy because of the Bankruptcy filing.

23. If the Policy is terminated, the Trustee will be unable to effectively administer the Debtor's Estate as the Trustee will not have Commercial Property insurance in place. The Debtor has chemical products that must be disposed of by

proper means to avoid harm to the public and could be sold for the benefit of creditors of the Estate.

24. There will be no harm to any other party by issuing an order enjoining the Respondent from terminating the Policy. The Trustee will pay the Respondent for any premiums that are due (if any). Furthermore, the risk of exposure to a claim is nominal as the Trustee is attempting to orderly liquidate and properly dispose of the assets of the Debtor.

25. Finally, the public interest requires the insurance of injunctive relief. Without an injunction in place, the Trustee will be unable to properly administer the Estate, which includes proper disposal of the chemicals.

26. The failure to grant an order to enjoin the cancellation of the Policy will cause a substantial hardship for the Estate and the public at large as the Trustee will be unable to take the appropriate steps to orderly administer the assets of the Debtor.

27. The request for an expedited hearing in this matter has not been caused by any delay by the Trustee or her counsel.

WHEREFORE, the Trustee respectfully requests that this Honorable Court enter an Order enforcing the automatic stay, enjoining the termination of the insurance Policy and authorizing the Trustee to assume the Policy in accordance with 11 U.S.C. §365.

Respectfully Submitted,

Date: December 1, 2022

/s/ David L. Fuchs
David L. Fuchs
PA I.D. #205694
Fuchs Law Office, LLC
554 Washington Avenue
First Floor
Carnegie, PA 15106
(412) 223-5404 phone
(412) 223-5406 fax
dfuchs@fuchslawoffice.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: LOCKHART CHEMICAL COMPANY, | Bankruptcy No.: 22-22005-CMB |
| Debtor, | Chapter 7 |
| NATALIE LUTZ CARDIELLO, CHAPTER 7 TRUSTEE FOR LOCKHART CHEMICAL COMPANY, | |
| Movant, | |
| v. | |
| MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED, | |
| Respondent. | |

## CERTIFICATE OF SERVICE

I, David L. Fuchs, hereby certify, that on the 1st day of December, 2022, a true and correct copy of the foregoing **EXPEDITED MOTION TO ENFORCE THE AUTOMATIC STAY, ASSUME EXECUTORY CONTRACT AND TO ENJOIN TERMINATION OF INSURANCE POLICY** was served upon the following (via electronic service and/or First Class Mail):

Karen Norrid
Energy Technical Underwriters, Inc.
Karen_Norrid-ETU@etuins.com


Energy Technical Underwriters, Inc.
A division of J.H. Blades & Company
520 Poast Oak Blvd., Sutie 250
Houston, Texas 77027
info@jhblades.com

Angela Dormire
adormire@jhblades.com

Annie Singlton
asingleton@jhblades.com

Brenda Buckner
bbuckner@jhblades.com

Karen Hudgens
khudgens@jhblades.com

Luey Kliner
lkliner@jhblades.com

Mark Lock-Smith
Mlockhart-smith@jhblades.com

Nan Woodard
nwoodard@jhblades.com

Scott Pierce
spierce@jhblades.com

Markel Corporation
4521 Highwoods Parkway
Glen Allen, VA 23060

Richard R. Grinnan
Chief Legal Officer
4521 Highwoods Parkway
Glen Allen, VA 23060

Date: December 1, 2022

/s/ *David L. Fuchs*
David L. Fuchs
PA I.D. #205694
Fuchs Law Office, LLC
554 Washington Avenue
First Floor
Carnegie, PA 15106
(412) 223-5404 phone
(412) 223-5406 fax