### IN THE UNITED STATES BANKRUTPCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | ) | Bank. Case No.:22-22005-CMB |
| | ) | |
| LOCKHART CHEMICAL COMPANY, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | Hearing Date and Time: |
| CRYSTAL H. THORNTON-ILLAR, | ) | **September 26, 2024 @ 1:30 p.m.** |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Movant, | ) | Response Deadline: **September 9, 2024** |
| | ) | |
| v. | ) | |
| | ) | Related Doc Nos. 17, 29, 123, 128, 161, |
| NO RESPONDENT, | ) | 226, 231 |
| | ) | |
| Respondent. | ) | |

### TRUSTEE'S MOTION FOR AUTHORITY TO
### CLEAN UP AND DISPOSE OF HAZARDOUS WASTE

AND NOW, comes Crystal H. Thornton-Illar, the Chapter 7 Trustee (the "**Trustee**"), by her undersigned counsel, and hereby files this Motion for Authority to Clean Up and Dispose of Hazardous Waste (the "**Motion**"). In support hereof, the Trustee respectfully states as follows:

### JURISDICTION

1. This proceeding is a core proceeding over which this Court has jurisdiction under 11 U.S.C. § 157(b)(1).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

3. On October 10, 2022 (the ("**Petition Date**"), the Lockhart Chemical Company (the "**Debtor**") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "**Bankruptcy Code**") in the United States Bankruptcy Court

for the Western District of Pennsylvania at the above-captioned case number (the "**Bankruptcy Case**").

4. On October 11, 2022, Natalie Cardiello was appointed as the Chapter 7 Trustee (the **"Initial Trustee"**).

5. On October 19, 2022, the Initial Trustee filed an Expedited Motion for Authority to Operate Debtor's Business, *Nunc Pro Tunc* [Doc. No. 17] (the "**Motion to Operate**"). On October 25, 2022, an order was entered granting the relief requested in the Motion to Operate [Doc. 29] authorizing the Debtor's business operations to continue for six months to allow the Trustee time to sell the Debtor's assets.

6. On April 25, 2023, the Initial Trustee filed a Second Motion for Authority to Continue to Operate the Debtor's Business [Doc. No. 123] (the "**Second Motion to Operate**"). On May 8, 2023, an Order was entered graining the relief requested in the Second Motion to Operate and authorizing operations of the Debtor's business for an additional six months [Doc. No. 128].

7. On November 1, 2023, the Initial Trustee filed the Expedited Third Motion for Authority to Continue to Operate the Debtor's Business [Doc. No. 161] (the "**Third Motion to Operate**"). On November 3, 2023, an order was entered granting the relief requested in the Third Motion to Operate and authorizing the Debtor's business operations through July 31, 2024.

8. On May 30, 2024, Crystal H. Thornton-Illar was appointed as the successor trustee due to the unexpected death of Natalie Cardiello.

9. On July 9, 2024, the Trustee filed the Expedited Fourth Motion for Authority to Continue to Operate the Debtor's Business [Doc. No. 226] (the "**Fourth Motion to Operate**"). On July 18, 2024, an order was entered granting the relief requested in the Fourth Motion to

Operate and authorizing the Debtor's business operations through January 31, 2025 [Doc. No. 231].

10. Prior to the Petition Date, the Debtor manufactured and globally marketed a wide range of additives for formulating rust preventives, corrosion inhibitors, emulsifier packages, and other processing additives for metalworking and greases (the "**Product**") at its facility located at 4302 James P. Cole Blvd. Flint, Michigan 48505 (the "**Premises**").

11. In the ordinary course of the Debtor's business of manufacturing Product, the Debtor generated hazardous waste, which requires disposal. Additionally, there are raw materials used in manufacturing Product that remain on the Premises and are considered hazardous waste.

12. Prior to the Petition Date, the Debtor had a chemical spill that resulted in chemicals leaking onto the ground at the Premises and ultimately into the Flint River. Due to the spill, the Debtor is no longer able to discharge storm water directly into the local water treatment plant and must stop drainage by pumping stormwater into totes as the water is potentially hazardous waste.

13. The Assistant Attorney General for the Michigan Department of Attorney General, Environment, Natural Resources, and Agriculture Division ("**EGLE**") has provided the Trustee with a list of pending environmental concerns, and cleaning up and disposing of hazardous waste as set forth in this Motion is at the top of that list.

14. Therefore, the Trustee seeks authority to dispose of the hazardous waste and potentially hazardous waste located on the Premises.

15. Clean up and disposal of the hazardous waste may be in the ordinary course of business, but the Trustee files this motion out of an abundance of caution given the expense associated with cleaning up and disposing of hazardous waste located on the Premises and the length of time some of the hazardous waste has been stored on the Premises.

**RELIEF REQUESTED**

16. The Trustee seeks authority to clean up and dispose of hazardous waste located on the Premises.

17. The Trustee plans to contract with Young's Environmental Cleanup, Inc. ("**Young**") to clean up and dispose of the hazardous waste located on the Premises. Young is an environmental and emergency response contractor.

18. The Debtor contracted with Young prior to the Petition Date to assist with environmental clean-up related to the chemical spill.

19. The Initial Trustee and the Trustee have also hired Young to assist with ordinary course environmental clean-up on the Premises. Young is extremely familiar with the Premises.

20. Attached as **Exhibit "A"** is the Lockhart Chemical-Remaining Hazardous Waste Concerns dated July 22, 2024, which is an estimate prepared by Young to clean up and dispose of certain hazardous waste on the Premises.

21. While Young has provided an estimate for cleanup and disposal of each item of hazardous waste, EGLE provided the initial priority list of environmental concerns and has requested that the Trustee undertake each of these projects.

22. This is not a comprehensive list of all environmental issues or even all hazardous waste issues on the Premises but is a list of the highest priority waste disposal items according to the environmental regulatory agencies.

a. **Disposal of Hazardous Liquid Waste Totes**

23. The Trustee seeks authority to remove and dispose of fourteen poly totes, which are currently located in the truck wash area, that contain hazardous liquid waste.

24. The totes contain storm water pumped from the Premises as well as oily sheen pumped from the Barium Filter press area.

25. The Debtor had 47 totes of liquids that were collected and tested. Thirty-three of the 47 totes were identified as non-hazardous and met the criteria for discharge via the oil separator system into the local water treatment plant. The other 14 totes were identified to contain hazardous levels of barium and chromium. State and Federal regulations require that the 14 totes with hazardous waste be shipped offsite and disposed of via incineration.

26. The estimate to ship and dispose of the 14 hazardous totes is $17,988 as set forth on **Exhibit "A"**.

27. The 14 totes contain flammable liquids that pose a risk of fire if not removed. The Trustee's environmental attorney recommends that the Trustee move forward with removal of the 14 totes given the potential increased liability if the totes remain and a fire occurs.

28. Therefore, the Trustee seeks authority to remove and dispose of the 14 totes of hazardous waste.

b. **The Hot Room**

29. The Trustee also seeks authority to clean up the hot room (the "**Hot Room**"), which is an area adjacent to the office that is heated via steam from a boiler. There are approximately 100 fifty-five-gallon drums of materials stacked up in the Hot Room that should be characterized, segregated and inventoried. The Debtor's staff is not entirely sure what materials are contained in these drums. Therefore, the materials in the drums will need to be tested and characterized. If the drums contain hazardous waste, they would be disposed of by shipping them to U.S. Ecology in Detroit for disposal.

30. Additionally, EGLE and Young have noted that several of the drums appear to be compromised or leaking. Those drums will require closer inspection and special handling. There also appears to be product on the floor. Therefore, the floor must be cleaned and degreased and any solids on the floor will need to be sampled and tested for waste characterization.

31. The estimated cost to clean-up the Hot Room and dispose of hazardous waste is approximately $82,140. *See* **Exhibit "A"**.

32. The Trustee's environmental attorney has stated that failure to clean up the Hot Room could pose a real threat of a spill or fire since the materials located in the Hot Room are unknown. Further, the materials may not be stored in appropriate containers since some of them seem to be leaking, which could lead to issues such as a fire or spill.

33. Therefore, the Trustee seeks authority to clean out, characterize, and dispose of the hazardous material contained in the Hot Room.

c. **Characterization, Transportation and Disposal of Miscellaneous Waste Containers**

34. The Trustee seeks authority to hire Young to sample, characterize, and potentially dispose of miscellaneous waste containers in the Truck Wash, Warehouse, Meyers Room and other locations around the Premises. This includes various types of containers, including drums, totes, pails, and other smaller containers.

35. Many of these containers were on the Premises prior to the Petition Date and should be disposed of properly. Again, the Trustee's environmental attorney agrees that these waste containers should be disposed of since some of them contain unknown substances, which could be flammable or corrosive.

36. The cost to clean up, sample and characterize these waste materials is approximately $48,280. *See* **Exhibit "A"**.

    **d. Tank 56 and 58 Barium Cleanout**

    37.    Tank 56 and Tank 58 are large above-ground storage tanks that have a barium sludge substance on the bottom of the tank. The tanks have been drained, but each tank requires a clean out with confined space entry to remove the sludge and decontaminate the tanks for final closure.

    38.    The cost for cleaning up and disposing of the hazardous waste in these tanks is estimated at $31,000. *See* **Exhibit "A"**.

    **e. Tanks 321, 304 & 510**

    39.    Tanks 321, 304, and 510 contained flammable and/or corrosive hazardous waste. The tanks were pumped out and the waste was disposed of, but the tanks need to be cleaned out and decontaminated prior to decommissioning. This includes removal, characterization, and disposal of any residual waste recovered.

    40.    The cost is estimated at $25,340. *See* **Exhibit "A"**.

    **f. Filter Press Building Decontamination**

    41.    The Filter Press Building is contaminated with Barium, which was used in manufacturing Product. The floor, the presses, the ceiling, and the conveyor system are coated with a heavy residual material that contains Barium. The Truste seeks authorization to clean up the entire room and remove all hazardous waste liquids.

    42.    The cost is estimated at $64,637.00.

    43.    The Trustee submits that the cleanup and removal of the hazardous waste is likely in the ordinary course of the Debtor's business and would normally not require Court approval, however, given the costs involved, the Trustee is asking the Court to authorize but not require the Trustee to move forward with these environmental clean-up projects set forth on **Exhibit "A"**.

7

44. The projects are listed in the order of priority with the first three being the most pressing projects. The Trustee seeks authority to clean up and dispose of all of the items set forth on Exhibit A rather than filing a separate motion to address the remaining items at a later time.

45. If the Court is only inclined to authorize the Trustee to move forward with some of the projects, the Trustee submits that the Court should approve the first three items as those are the most pressing.

46. If the Court authorizes and the Trustee approves all the clean-up and disposal of the waste materials referenced in the Motion, the estimated total cost is $269,385. The Trustee currently has the funds to pay for the clean-up and removal of the hazardous waste.

47. Further, cleanup and disposal of hazardous waste is required by EGLE and other environmental agencies regardless of if the Premises is ultimately closed or sold.

Wherefore, the Trustee requests the Court authorize the Trustee to h clean up and dispose of the hazardous waste and potentially hazardous waste as outlined in this Motion.

LEECH TISHMAN FUSCALDO & LAMPL, LLC

Date: August 23, 2024

By: */s/ Crystal H. Thornton-Illar*
Crystal H. Thornton-Illar
PA I.D. No. 93003
525 William Penn Place, 28th Floor
Pittsburgh, Pennsylvania 15219
Telephone: 412.261.1600
Facsimile:  412.227.5551
Email: cthornton-illar@leechtishman.com

*Chapter 7 Trustee*